IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RECOVERY RESORT OF THE PALM BEACHES LLC, | ) ) ) |
| Plaintiff, | ) 2:24-cv-01177 ) ) |
| v. | ) ) |
| UPMC HEALTH PLAN, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Plaintiff Recovery Resort of the Palm Beaches, LLC, a residential treatment center that provides substance-abuse treatment, contracted with Defendant UPMC Health Plan to provide certain treatment services to members of UPMC's health-insurance plans, at the contracted rates. ECF 9, ¶¶ 12-13. Recovery Resort alleges that UPMC then refused to pay Recovery Resort for services that were provided to its members. *Id.*, ¶ 21. UPMC claims that it had no contractual obligation to pay Recovery Resort because UPMC had rescinded the insurance policies of these members, and the rescissions were retroactive to the inception date of those members' policies. *Id.*, ¶ 19.

Recovery Resort has brought claims for breach of contract and breach of the implied covenant of good faith and fair dealing (Count I), promissory estoppel (Count II), unjust enrichment (Count III), and negligent misrepresentation (Count IV). UPMC now moves to dismiss the operative complaint (the First Amended Complaint). ECF 11. The motion is fully briefed and ready for disposition. After careful consideration, the Court will deny the motion.[1]

---

[1] UPMC initially argues that Recovery Resort did not adequately plead diversity jurisdiction because it did not trace the citizenship of all the members of the LLC. The Court ordered Recovery Resort to explain its citizenship (ECF 16), which it did

*Count I – Breach of Contract.* Recovery Resort plausibly pleads a breach-of-contract claim based on the express terms of the contract. The contract obligates UPMC to pay for services provided to its members. ECF 9, ¶ 12. It is also "only valid if UPMC Health Plan is the primary insurance carrier at the time of service and the member meets eligibility requirements[,]" and the contract "automatically terminate[s] if UPMC Health Plan is no longer the primary insurance carrier for the member or if the member fails to meet eligibility requirements." ECF 12-1, p. 3.

The crux of UPMC's argument is that Recovery Resort had no right to payment for services to members whose coverage was rescinded, because UPMC had a right under federal law to rescind coverage retroactively, such that the coverage is void from the time of the member's enrollment. ECF 12, p. 14. And since the policies were voided as of their original effective date, UPMC argues, it follows that "termination of any duty to pay under the Agreement necessarily is retroactive as well." *Id.*

But the contract does not give UPMC any express right to withhold payment based on a retroactive rescission of a member's policies. *See* ECF 9, ¶ 25 (pleading that the "Agreement does not permit UPMC to terminate the Agreement with retroactive effect or to withhold payment for services rendered before a termination."). Therefore, at this stage, it is sufficient that Recovery Resort treated members pursuant to the agreement (*id.*, ¶ 16), the members were confirmed to have valid and effective policies with UPMC at the time Recovery Resort treated the members (*id.*, ¶ 17), and UPMC failed to pay for services provided to members (*id.*, ¶ 21).

To the extent that UPMC contends that the phrase "eligibility requirements" incorporates some right to withhold payments based on a retroactive rescission of a

---

(ECF 17). Based on Recovery Resort's representation, there is complete diversity. The Court will allow Recovery Resort to amend the diversity jurisdiction allegations in the complaint to conform with the facts stated in its response. ECF 17, p. 3.

member's policy, discovery is needed to flesh this out. "Eligibility requirements" is not a defined term in the contract, and it is unclear from the face of the contract what the parties intended in using this term. Further, to the extent that UPMC relies on principles of rescission (*e.g.*, because of the rescission, the members didn't meet "eligibility requirements" and the Health Plan was not their primary insurance carrier at the time of service), Recovery Resort disputes the validity of the rescission; discovery on rescission is needed, including on the bases for rescission, whether those bases were proper, and which members were affected by this. *See* ECF 14, p. 11 n.6 & p. 12 (discussing discovery regarding the validity of the rescissions).

Recovery Resort also plausibly pleads a breach of the implied covenant of good faith and fair dealing premised on UPMC misleading Recovery Resort about members' eligibility.

The central inquiry of the implied-covenant claim is "the reasonable expectations of the contracting parties." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 170 (3d Cir. 2001). "Examples of bad faith can include evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562, 583 (E.D. Pa. 2009) (cleaned up); *see also Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 513 (E.D. Pa. 2012) ("The covenant of good faith may [] be breached when a party exercises discretion authorized in a contract in an unreasonable way." (cleaned up)).

The complaint alleges that UPMC concealed its "intention to later retroactively rescind Members' policies and then refuse to pay Claims on that basis" and "repeatedly induc[ed] Recovery Resorts to provide services to Members by repeatedly confirming that the relevant Members had valid and effective policies with UPMC." ECF 9, ¶ 39; *see also id.*, ¶26 ("[L]ong before UPMC informed Recovery Resort of the

Rescission—and potentially before the parties entered the Agreement—UPMC was planning and intended to later retroactively rescind the policies of certain Members."). These allegations are sufficient at this stage, because they lead to a reasonable inference that UPMC's conduct in misleading Recovery Resort about the members' policies and about UPMC's intention to exercise its rescission rights frustrated Recovery Resort's justifiable expectations when entering the contract, and thus could amount to bad faith.

The Court notes that the allegations supporting the implied-covenant claim are similar to the allegations underlying the negligent-misrepresentation claim at Count IV. At this stage, it is not clear to the Court whether the allegations, *i.e.*, that UPMC misled Recovery Resort into thinking that the members' policies were valid and effective and that Recovery Resort would be paid for the services provided, amount to bad faith in relation to a contractual duty, or if they instead arise out of a tort law duty (*i.e.*, to not make affirmative misrepresentations, irrespective of any contractual obligations). The implied-covenant claim may ultimately fail if, after discovery, the record establishes that the implied-covenant claim is factually indistinguishable from the negligent-misrepresentation claim, and actually sounds in tort rather than for breach of contract—but this is an issue better addressed after discovery and at the summary-judgment stage. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91-92 (3d Cir. 2000) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are identical to a claim for relief under an established cause of action. . . . [W]e believe that if a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts, Pennsylvania courts likely would decline to proceed with the claim alleging bad faith." (cleaned up)).

***Counts II (Promissory Estoppel) & III (Unjust Enrichment).*** The promissory-estoppel and unjust-enrichment claims are properly pled in the

alternative. While a promissory-estoppel claim is precluded where a valid and enforceable contract exists, plaintiffs can "plead a claim for promissory estoppel as an alternative to [their] breach of contract claims, especially [] when [] the validity and terms of the contract have not been determined[.]" *TAKTL, LLC v. IWR, N. Am., LLC*, No. 18-01546, 2020 WL 5802994, at *3 (W.D. Pa. Aug. 20, 2020) (Eddy, C.M.J.); *see also Hirtle Callaghan Holdings v. Thompson*, No. 18-2322, 2020 WL 5820735, at *5 (E.D. Pa. Sept. 30, 2020) (allowing promissory-estoppel claim to proceed in the alternative, despite the existence of an agreement, particularly because the "contours and scope" of the agreement were not yet known). Likewise, a plaintiff may plead unjust enrichment in the alternative when "the contract at issue covers only a part of the relationship between the parties[.]" *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017); *see also Kraus Indus., Inc. v. Moore*, No. 06-542, 2007 WL 2744194, at *8 (W.D. Pa. Sept. 18, 2007) (Fischer, J.) ("[A] claim for unjust enrichment will not be barred if it concerns conduct outside the scope of the original agreement or contract."). Here, the contours of the contract are unknown, at a minimum, as to the alleged "Additional Members," who may not be covered by the contract. ECF 9, ¶¶ 13, 44, 51.

*Count IV – Negligent Misrepresentation.* The Court declines to apply the gist-of-the-action doctrine or economic-loss rule at this stage. It is premature to decide if the alleged misrepresentations (about the validity of members' policies) "arise squarely from the contractual obligations [UPMC] owed [Recovery Resort,]" because the scope of UPMC's contractual obligations is not yet clear. *Raymond Handling Concepts Corp. v. Invata LLC*, No. 23-3002, 2024 WL 3466178, at *3 (3d Cir. July 18, 2024) (cleaned up)*; see also N. Am. Commc'ns, Inc. v. Herman*, No. 17-157, 2018 WL 2186422, at *3 (W.D. Pa. May 11, 2018) (Gibson, J.) (collecting cases that "conceptualize the misrepresentation about one's intention to perform under the contract as distinct from the breach of the contract itself"); *CMC GH Sisak D.O.O. v.*

*PTC Grp. Holdings Corp.*, No. 15-1357, 2016 WL 11480715, at *10 (W.D. Pa. May 19, 2016) (Mitchell, M.J.) ("District courts in Pennsylvania have noted that caution should be exercised in determining the 'gist of an action' at the motion to dismiss stage." (collecting cases)); *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, No. 13-150, 2014 WL 2605427, at *6 (W.D. Pa. June 11, 2014) (Gibson, J.) (same).

Likewise, applying the economic-loss rule at this stage would be premature. Under the economic-loss rule, "recovery for purely pecuniary damages is permissible under a negligence theory provided that the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." *Dittman v. UPMC*, 196 A.3d 1036, 1038 (Pa. 2018) ("[A] negligent misrepresentation claim . . . is one among many tort claims in Pennsylvania for which the economic loss doctrine does not act as a bar for recovery of purely economic losses."). Again, given that some discovery is needed to assess the contours of the contract claims, the economic-loss rule is better suited for a decision at summary judgment.[2]

\* \* \*

Accordingly, Defendant's motion to dismiss (ECF 11) is **DENIED**. Recovery Resort is granted leave to file an amended complaint to reflect the diversity jurisdiction allegations in ECF 17. Any amended complaint must be filed by **August 7, 2025**.

Dated: July 24, 2025

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

[2] The Court also declines to apply the Rule 9(b) heightened pleading standard for Counts II-IV. ECF 12, pp. 23-24. *See Cogswell v. Wright Med. Tech., Inc.*, No. 15-295, 2015 WL 4393385, at *5 (W.D. Pa. July 16, 2015) (Bissoon, J.) ("The majority of district courts within the Third Circuit have declined to apply this heightened pleading standard to claims of negligent misrepresentation.").